## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| **JANE E. MOORE,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs.** ) | **Cause No. 4:03cv0086AS** |
| ) | |
| **SUPERIOR AUTO, INC.,** ) | |
| **SAC FINANCE, INC., LARRY CAPPIS,** ) | |
| **Individually and in his Representative Capacity,** ) | |
| **And CHERYL MERRITT, Individually and in** ) | |
| **her Representative Capacity,** ) | |
| ) | |
| **Defendants** ) | |

### *MEMORANDUM, OPINION AND ORDER*

This cause is before the Court on Defendants' Motion for Summary Judgment filed on November 24, 2004. The complaint in this case was filed on October 31, 2003 by counsel for Ms. Jane E. Moore (hereinafter "Ms. Moore"). Since the filing of the initial five count complaint, this Court dismissed Counts, I, II, and IV, with prejudice on October 20, 2004 by Ms. Moore's motion. In the remaining Count III, Ms. Moore alleges that Defendants, Superior Auto, Inc. and SAC Finance, Inc. retaliated against her for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (hereinafter "Title VII"). In addition, Ms. Moore's Count V includes a State law claim for intentional infliction of emotional distress against the Defendants, the above named Corporations, Larry Cappis, and Cheryl Merritt. Oral argument was held in open court on March 4, 2005 in South Bend, Indiana, and briefs have been filed. After the careful consideration of the parties' submissions and oral argument the Court now rules as follows.

## I. Background

In ruling on the Defendant's Motion for Summary Judgment the Court draws it's factual statement from the Plaintiff's version of the facts and any uncontested facts submitted by the Defendants.

Ms. Moore was employed by the Defendant Corporations in Monticello, Indiana for approximately eight years, beginning in August 8, 1994 when she was hired as a collector until December 31, 1996.  Complaint ¶ 10; Answer ¶ 10; Pl.'s Brief in Opp.'n pp. 1-2. Ms. Moore's employment switched from Superior Auto, Inc. to SAC Finance effective January 1, 1997 and continued through the date of her termination.  Answer ¶ 10.  On or about November 26, 2002, Defendant Cappis, a managerial employee to whom Ms. Moore reported, grabbed Ms. Moore's face, twisted it toward him and tried to kiss her. Complaint ¶ 11; Pl.'s Brief in Opp.'n p. 4.  Ms. Moore told Defendant Cappis not to touch her face because it hurt.  *Id*.  Defendant Cappis responded by later telling her that "all [he] was going to do was give [her] a Thanksgiving kiss."  Pl.'s Brief in Opp.'n p. 4. The Defendant Corporation, SAC Finance, Inc., admits that there was physical contact by Cappis with Ms. Moore as stated in the Plaintiff's Complaint ¶ 11 and Defendants' Answer ¶ 11, and that the conduct of Cappis towards Ms. Moore may have constituted battery under Indiana law.  Answer ¶ 31.  Almost immediately after Defendant's alleged sexually harassing assault and battery upon Ms. Moore, Ms Moore located her husband at his work and her husband contacted Randy Hayes, Regional Manager for Defendant Corporations.  Complaint ¶ 12.  Later that day, Ms Moore spoke with Officer Michael Rardon of the Monticello Department of Police, and the incident was logged by the police.  *Id*.

On or about November 27, 2002, Ms. Moore and her husband, Kevin Moore, met with Jennifer Shafer, Region Sales Manager, and Defendant Cheryl Merritt to discuss Ms. Moore's allegations of sexual harassment levied against Cappis.  Complaint ¶ 13; Answer ¶ 13; Pl.'s Brief in Opp.'n p. 4.  Shafer and Defendant Merritt claimed to have spoken with Defendant Cappis and stated that Cappis had admitted to the inappropriate conduct the day before.  Complaint ¶ 13; Answer ¶ 13.  Ms. Moore asked if Cappis was to be removed from the store, and Shafer and Merritt told Ms. Moore that the decision would have to be made by Randy Hayes and Alan Ehler.  *Id*.  The Defendant Corporations admit that at this time the decision to either terminate Cappis or transfer him to a different location would have been made by Hayes and Ehler.  Answer ¶ 13. Shafer and Merritt went on to relate to Ms. Moore that it costs the company a lot of money to remove a manager from a store.  Complaint ¶ 13; Pl.'s Brief in Opp.'n p. 4. Also during the November 27, 2002 meeting Merritt asked if Ms. Moore could just forgive Cappis, and that if not, "maybe the company won't be so forgiving. Complaint ¶ 14; Pl.'s Brief in Opp.'n p. 4.

After Ms. Moore complained to the Defendants about Cappis' alleged sexually harassing behavior and about her not feeling comfortable around Cappis, Cappis was replaced by Mickey Straub,  Pl.'s Brief in Opp.'n p. 4, while Cappis was given paid leave by the Defendant Corporations.  Answer ¶ 14.  After Straub replaced Cappis, Straub remarked to Troy Moore (a coworker of Ms. Moore's at the Monticello by no relation) that Ms. Moore was "creating problems."  *Id*.  Furthermore, after Straub replaced Cappis, but prior to March 1, 2003, Straub remarked to Troy Moore that Ms. Moore "would be leaving the company soon."  *Id*.

Ms. Moore alleges that at this point the Defendant Corporations began the process that would culminate in the discriminatory, retaliatory, and pretextual termination of Ms. Moore's employment.  Complaint ¶ 15.

Ms. Moore's disciplinary record with the Defendant Corporations is anything but clean. Between August 14, 1995 and July 3, 2000, Ms. Moore was given disciplinary conferences for fighting with coworkers (8/14/94), Attitude/Fighting (1/18/96 and 5/1/96), Attitude/uncooperative (10/17/97), and Policy violation-leaving money in store (7/3/00).  Pl.'s Brief in Opp.'n, p. 2.  These disciplinary conferences were unrelated to the termination of Ms. Moore's employment.  *Id*.  On July 3, 2001, Ms. Moore was given a disciplinary conference for refusing to collect a payment after closing.  *Id*.  Ms. Moore received a written warning advising her that she could be terminated for her failure to accept a payment from a customer.  Deposition of Shaffer pp. 10-11, exhibit B to deposition; Df.'s Brief in Support p. 5.  However, between July 3, 2001 and February, 2003, Ms. Moore received no disciplinary conferences.  *Id*.

On October 14, 2002, over one month prior to Ms. Moore's reporting Cappis for sexually harassing conduct, the Defendants evaluated Ms. Moore's performance where she received exceptional evaluation remarks regarding the year prior to October 2002 and stating that she was a great employee and team player.  *Id*. at pp. 2-3.  About this same time, on or about October 29, 2002 the Defendants held a disciplinary conference with Jeana Miller, a collector in the Monticello store along with Ms. Moore, where her performance deficiencies were discussed.  Pl.'s Brief in Opp.'n pp. 3-4.

In late 2002 and early 2003, the Defendants planned to downsize some of the smaller stores from two collectors to one.  Answer ¶ 16; Pl.'s Brief in Opp.'n p. 4.  Jennifer

Shafer testified that "we weighed out . . . the pros and cons of – of each individual person. Pl.'s Brief in Opp.'n p. 5. On or about December 2002 Randy Hayes, Zone Manager for the Defendants, contacted Jeana Miller to inquire whether she could perform the duties of a sole collector at the Monticello location. Complaint ¶ 16; Pl.'s Brief in Opp.'n p. 5. Even though Ms. Moore had previously performed the duties of a sole collector, and Jeana Miller had only performed the duties of a sole collector when Ms. Moore was ill, Hayes did not contact Ms. Moore. Pl.'s Brief in Opp.'n p. 5. Randy Hayes was aware that Ms. Moore had worked as a sole collector previously for the company. Affidavit of Randy Hayes; Df.'s Brief in Support p. 4.

On or about February 2003, both Ms. Moore and Jeana Miller were disciplined for having accounts without insurance and accounts without personal references. Pl.'s Brief in Opp.'n p. 5.[1] Ms. Miller was not terminated from the Defendant Corporations at all, Ms. Miller quit her employment. Pl.'s Brief in Opp.'n p. 5; Df.'s Reply Brief p. 2. Ms. Moore asserts that Ms. Miller did not complain of sexual harassment, and Ms. Miller was not terminated, Pl.'s Brief in Opp.'n p. 10, however the fact that Ms. Miller did not complain of sexual harassment is unsupported by the record where the deposition of Jennifer Shafer (attached and referenced by Plaintiff and Defendant)[2] reveals that Ms. Moore's own counsel asked Shafer, "Did Jeana Miller ever complain of sexual harassment against anybody at the company to your knowledge?" Deposition of Jennifer

---

[1] Plaintiff initially alleged that "On or about February, 2003, Ms. Moore was disciplined by Defendant Corporations for not properly keeping insurance and reference information on the computer. Upon information and belief, Jeana Miller had similar deficiencies but was not disciplined." Complaint ¶ 17. However, Defendant denied "that Jeana Miller was not disciplined upon similar deficiencies," Answer ¶ 17, and therefore this Court adopts Plaintiff's later re-statement of the facts that "Moore was disciplined . . . Miller was disciplined . . . [and] neither Ms. Moore nor Ms. Miller were terminated by the Defendants as a result of the February, 2003 disciplinary actions." Pl.'s Brief in Opp.'n p. 5.

[2] Pl.'s Motion for Summary Judgment ¶ 4; and Df.'s Brief in Opp.'n p 2, n. 2.

Shafer p. 54; Df.'s Reply Brief p. 2.  Jennifer Shafer answered that yes Jeana Miller had

complained of sexual harassment.  Df.'s Reply Brief p. 2.  Jeana Miller had complained

sexual harassment by Jerry Strayer the sales manager in the Monticello location, although

Ms. Shafer could not recall the exact date, but it was prior to the later half of 2001.

Deposition of Jennifer Shafer p. 55; Df.'s Reply Brief p. 2.

On March 1, 2003 Troy Moore was working in Defendants' office with Ms. Moore, and

they were the only two people in the office.  Pl.'s Brief in Opp.'n p. 5.  On that date, after

the office closed, a customer came to the door with a payment, and because the customer

had cash, Troy Moore told the customer to get a money order and place it in the drop

box.  Pl.'s Brief in Opp.'n pp. 5-6.  At no time did either the customer or Troy Moore

involve Ms. Moore in the conversation regarding the customer's payment; furthermore, it

was Troy Moore's decision to have the customer get a money order and Ms. Moore was

not involved in the interaction with the customer in any way.  Pl.'s Brief in Opp.'n p. 6.

However, the customer chose to complain to Defendant Corporations about Ms. Moore's

conduct on or about March 1, 2003.  Complaint ¶ 19; Answer ¶ 19.

The details of the Defendant Corporations' investigation into the March 1, 2003 incident

where the customer's payment was refused are contested.  Pl.'s Brief in Opp.'n p. 6;

Df.'s Brief in Support pp. 4-5.  In essence, Jennifer Shafer testified that she spoke with

Troy Moore regarding the March 1, 2003 incident, however Troy Moore denies that

Shafer or any other representative of the Defendants spoke with him regarding the March

1, 2003 incident.  *Id*.  This Court accepts Ms. Moore's version of the investigation in that

the Defendant Corporations did not discuss the March 1, 2003 incident with Troy Moore;

however, the importance of the incident is the undisputed fact that the customer

complained about Ms. Moore's refusal to accept the cash payment and Jennifer Shafer obtained a written statement from the customer verifying the incident.[3]  Df.'s Brief in Support, 5.

On March 6, 2003 Defendant Corporations fired Ms. Moore because allegedly Ms. Moore, rather than Troy Moore, refused to take cash from the customer on March 1, 2003.  Complaint ¶ 19; Answer ¶ 19; Pl.'s Brief in Opp.'n p. 6.  Troy Moore was not terminated as a result of the March 1, 2003 incident.[4]  Pl.'s Brief in Opp.'n p. 6.  The Monticello dealership has been a one collector operation since March of 2003.  Affidavit of Randy Hayes; Df.'s brief in Support p. 4.

Finally, on or about May 9, 2003, subsequent to Ms. Moore being fired, the Defendants provided an employment verification regarding Ms. Moore to Numbers & Words, Inc, a temporary agency.  Pl.'s Brief in Opp.'n p. 6.  In response to a question regarding whether Ms. Moore had received any termination/discharge warnings due to attendance problems within the last year employed with the company, the Defendants stated "Yes-multiple."  *Id*.  However, Ms. Moore did not have multiple warnings in her file regarding attendance problems within the last year of employment by the Defendants.  Pl.'s Brief in Opp.'n p. 7.  Ms. Moore claims that as a direct and proximate result of the conduct of the Defendants, she has suffered and continues to suffer substantial damages for mental anguish, emotional distress, and loss of enjoyment of life.  Complaint ¶ 20.

---

[3] "When Ms. Miller called the [customer] regarding their delinquent payment, the [customer] informed her of the refusal to accept payment.  Ms. Shafer then contacted the [customer] and had a meeting with them. Ms. Shafer obtained a written statement from [customer].  [Customer] states that she was present at 12:55 p.m. and Jane Moore refused to accept the $60.00 cash payment.  [Customer] states that the Plaintiff told her to 'go get a money order and drop it in the drop box because she had already counted her money'. " Deposition of Shaffer p. 31, exhibit H to deposition;  Df.'s Brief in Support p. 5.

[4] Incidentally, Troy Moore was fired some time after March 1, 2003 for supposedly divulging customer information and, "he had refused a direct request by the sales manager on collecting an account." Deposition of Jennifer Shafer p. 42; Df.'s Reply Brief p. 3.

On or about April 22, 2003 Ms. Moore filed charges of discrimination with the EEOC based on the conduct of Defendant Corporations.  She received a right-to-sue letter and filed a Complaint in federal court alleging the relevant retaliatory termination of her employment in violation of Title VII.  In addition, Ms. Moore has included a state law claim for intentional infliction of emotional distress.

## II. Standard of Review

The Court begins its analysis with a few remarks about the nature of summary judgment.[5] It is not, as parties opposing summary judgment are fond of pointing out, a vehicle for resolving factual disputes. 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2712, at 574 (2d ed.1983).  Moreover, because summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only:  to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 2712, at 574-78.

District courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions. *Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir. 1989); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103-04 (7th Cir. 1990); *see also, L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.,* 9 F.3d 561, 567 (7th Cir. 1993), *reh'g denied.*  Whether to apply such a rule strictly or to overlook any transgression is a

---

[5] For a similar discussion see *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994); *See also Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 639 (N.D. Ind. 1997).

matter left to the district court's discretion.  *See McGann v. Northeast Ill. Reg. Commuter R.R.,* 8 F.3d 1174, 1178 n. 3 (7th Cir. 1993), *reh'g denied; Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir. 1992).  The local rules promulgated under Federal Rule of Civil Procedure 83 have the force of law.  *See generally,* 10A Wright & Miller, § 2971, pp. 11-12 (1983 ed.).

One purpose of the local rules is to aid in the administration of justice by requiring that motions for summary judgment be properly briefed. *Tatalovich v. City of Superior,* 904 F.2d 1135, 1140 (7th Cir. 1990); *Bell, Boyd & Lloyd,* 896 F.2d 1101, 1102-03 (7th Cir. 1990).  Additionally, "[a] local rule of a federal district court is written by and for district judges to deal with the special problems of their court, and courts therefore give a district judge's interpretation of his court's local rules considerable weight."  *Bell,* 896 F.2d at 1101; *Schulz,* 965 F.2d at 519.  This Court has before required strict, consistent, "bright-line" enforcement of the local rules as essential to obtaining compliance with the rules and to ensuring that long-run aggregate benefits in efficiency inure to district courts.  See *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311 (7th Cir. 1995)). With this in mind, the Court now addresses the particular facts currently before it.

Local Rule 56.1(a) regarding summary judgment procedure specifically states:  In the text of the supporting brief or an appendix thereto, filed in support of a motion for summary judgment pursuant to Local Rule 7.1, there shall be a "Statement of Material Facts," supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence, as to which the moving party contends there is no genuine issue.  U.S. Dist.Ct.Rules N.D.Ind., Rule 56.1; *see also Goltz v. University of Notre*

*Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. Partnership,* 859 F. Supp. 1189 (N.D. Ind. 1994) (acknowledging that Rule 56.1 provides for a movant's statement of facts and a non-movant's statement of genuine issues).

Ms. Moore is correct, that the Defendants have failed to provide a "Statement of Material Facts" in their supporting brief or in an appendix thereto.  Pl.'s Brief in Opp.'n at pp. 1, n. 1.  As a result, Ms. Moore asks this Court to interpret Rule 56.1 to mean that summary judgment should be denied on the basis that the Defendants have not identified facts supporting their motion.  *Id.*  However, it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion.  *See Goltz*, 177 F.R.D. 638, 640 (N.D.Ind. 1997) (citing *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-23 (7th Cir. 1994), *reh'g denied,* (and cases cited therein); *Little v. Cox's Supermarkets,* 71 F.3d 637 (7th Cir. 1995); *Cf. Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir. 1992)).  Local Rules like 56.1 no doubt benefit the parties themselves by requiring their opponents to clarify exactly what they dispute and on what evidence they rely.  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1984) (citing *Mirocha v. TRW, Inc.,* 805 F. Supp. 663, 675 (S.D. Ind. 1992)).  However the ultimate inquiry is whether Ms. Moore has presented sufficient evidence for a reasonable factfinder to decide in her favor.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Court exercises its discretion here by overlooking Defendants' transgression of the Local Rules, and noting that "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is

foreordained" and in such cases summary judgment is appropriate.  *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

In determining if summary judgment is appropriate the court looks to the pleadings, depositions, answers to interrogatories and admission on file, together with any affidavits, to show whether there exists a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[6]  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).  The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 324 (quoting FED.R.CIV.P. 56).  A question of material fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue.  *Anderson*, 477 U.S. at 248.  To survive summary judgment, the nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991), nor may that party rely upon conclusory allegations in affidavits.  *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

In determining whether a genuine issue exists, the court must construe all facts and inferences in the light most favorable to the non-moving party, drawing all reasonable and justifiable inferences in favor of that party.  *Haugerud v. Amery School*

---

[6] Defendants did manage to designate and attach the following materials:  Complaint filed by Plaintiff, Answer filed by Defendant, Affidavit of Randy Hayes, Deposition of Cheryl Merritt, Deposition of Jennifer Shafer, and Deposition of Jane Moore, Df.'s Motion, ¶ 4, as well as file a brief and reply brief in support of their position; In addition, Plaintiff attached the same materials designated in Defendant's Motion and Plaintiff also provided a "Statement of Genuine Issues."  Pl.'s Brief in Opp.'n., pp. 1-7.

*District*, 259 F.3d 678 (7th Cir. 2001).  Applying this standard, the Court now considers the present motion for summary judgment.

### III.Discussion

#### a.  Title VII Retaliatory Discharge

Ms. Moore asserts that Defendants, Superior Auto, Inc. and SAC Finance, Inc. retaliated against her by firing her on March 6, 2003 because Ms. Moore had reported to the Defendants on November 25, 2002 that her supervisor, Larry Cappis, had engaged in sexually harassing conduct.

Title VII makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment . . . because she has opposed any practice made an unlawful employment practice" under the statute.  42 U.S.C. §§ 2000e-3(a).  In *Stone v. City of Indianapolis Public Utilities Div.*, the Seventh Circuit clarified the proper standard for summary judgment when a plaintiff claims that he was retaliated against for complaining about employment discrimination.  281 F.3d 640, 642-644 (7th Cir. 2002), *certiorari denied* 537 U.S. 879; followed by *Rogers v. City of Chicago,* 320 F.3d 748, 753-756 (7th Cir. 2003); *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 559-562 (7th Cir. 2004).  "The plaintiff in a retaliation case should have two (and only two) distinct routes to obtaining/preventing summary judgment."  *Stone*, 281 F.3d at 642.  To establish a *prima facie* case of retaliation under Title VII, Ms. Moore may proceed under either the direct or the indirect method.  *Id*.

Under the direct method, the method that is unrelated to *McDonnell Douglas*, Ms. Moore must present "direct evidence[7] (evidence that establishes without resort to

---

[7] "The question of how much evidence the plaintiff must present to establish a triable issue that the adverse employment action of which he complains was retaliatory is not susceptible of a general answer. But we remind that mere temporal proximity between the filing of the charge of discrimination and the action

inferences from circumstantial evidence) that (s)he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which (s)he complains." *Stone*, F.3d at 643. "If the evidence is uncontradicted, the plaintiff is entitled to summary judgment. If it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation." *Id*.

Under the indirect method, the method that is an adaptation of *McDonnell Douglas*[8] to the retaliation context, the plaintiff is required to show "that after filing the charge only (s)he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though (s)he was performing (her) job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial." *Stone*, F.3d at 644.

First, the Court notes that Ms Moore failed to establish a *prima facie* case for retaliation under any test set forth in *Stone*. Under the direct method, the parties do not dispute that Ms. Moore engaged in protected activity by complaining to her employers of

---

alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone*, F.3d at 643-44 (citations omitted).

[8] *McDonnell Douglas* sets out a burden-shifting test where the plaintiff must first establish a *prima facie* case by the preponderance of the evidence and then the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate, again, by a preponderance of the evidence, that the reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 805 (1973).

the sexual harassment and of filing her charge with the EEOC, nor do the parties contest that her termination constituted an adverse employment action.  However, Ms. Moore has failed to provide any evidence under the direct test that would establish a causal link between her complaint and termination.  See *Lang v. Illinois Dept. of Children and Family Services*, 361 F.3d 416, 419 (7th Cir. 2004); *Perkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1038-39 (7th Cir. 1998).  This element is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action.  *Perkins*, 163 F.3d at 1039 (reasoning that a period of just under three months was not a suspiciously short period of time) (citing *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998)).  Here, the temporal proximity between Ms. Moore's complaint of sexual harassment and her termination is simply inadequate to demonstrate a causal link.  At best, Ms. Moore can demonstrate that her termination occurred more than three months after she reported the sexually harassing conduct of Defendant Cappis.  This time sequence is insufficient to establish the causation prong of a *prima facie* case. *See id*. (temporal sequence is telling only when an adverse action follows "fairly soon" after the protected expression).

In addition, Ms. Moore asserts that a causal connection has been established by the fact that Defendants, through Cheryl Merritt, made it clear that it was expensive to the Defendants to remove a manager, such as Cappis, from a store; and that, if Ms. Moore could not forgive Cappis, then "maybe the company won't be so forgiving." However, despite these stray remarks, the Defendant Corporations took action and immediately replaced Cappis with Mickey Straub because Ms. Moore did not feel comfortable around Cappis, and Cappis was given paid leave.  Additionally, Ms. Moore

contends that Straub's remarks that Ms. Moore was "creating problems" and that Ms. Moore "would be leaving the company soon" created a causal relationship between her complaint and her termination.  However, this Court again emphasizes that these remarks were made more than three months prior to the March 1, 2003 incident and Ms. Moore's subsequent termination.

Furthermore, the Seventh Circuit has established that in order to constitute direct evidence of discrimination,[9] a statement must relate to the motivation of the decision-maker responsible for the contested decision.  *Wichmann,* 180 F.3d at 801; *Rothman v. Emory University,* 123 F.3d 446, 451 (7th Cir. 1997).  *See Hunt v. City of Markham, Ill.,* 219 F.3d 649, 652-53 (7th Cir. 2000) (when the decision-makers themselves, or those who provide input into the decision, express such discriminatory feelings around the time of, and in reference to, the adverse employment action complained of, then it may be possible to infer that the decision-makers were influenced by those feelings in making their decision).  Even if the comments were made by those who ultimately decided to terminate Ms. Moore in March 2003, this Court finds that it is simply not possible to infer that such comments were made around the time of or in reference to Ms. Moore's termination, nor could a reasonable jury conclude that the Defendant Corporations were influenced by feelings of retaliation due to Ms. Moore's complaint of sexual harassment some four months before her ultimate termination.

Beyond this, it also merits mention that the Defendant Corporations had previously warned Ms. Moore in writing on or about July 3, 2001, that she could be

---

[9] Direct evidence is evidence which can be interpreted as an acknowledgment of the defendant's discriminatory intent.  *Ezell v. Potter,* 400 F.3d 1041, *1051 (7th Cir. 2005) (citing *Wichmann v. Board of Trustees of Southern Illinois University,* 180 F.3d 791, 801 (7th Cir. 1999), *vacated and remanded on other grounds,* 528 U.S. 1111 (2000); *Kormoczy v. HUD,* 53 F.3d 821, 824 (7th Cir. 1995)).

terminated for her failure to accept payment from a customer.  Here, the undisputed evidence establishes that the March 1, 2003 incident involved a customer complaint to the Defendant Corporations that Ms. Moore refused to accept the customer's payment. Based on the Defendant Corporations' previous warning to Ms. Moore (long before Ms. Moore ever complained of sexual harassment) concerning her failure to properly accept payments, the Defendant Corporations clearly demonstrated a legitimate, non-discriminatory reason for firing Ms. Moore based on the customer's complaint, and therefore Ms. Moore was not harmed by retaliation.  As such, Ms. Moore must proceed under the indirect, burden shifting method.

Under the indirect method, Ms. Moore fails to meet the *prima facie* case[10] where Ms. Moore has not provided evidence that she was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity.  In determining whether employees are similarly situated, we must look at all relevant factors, the number of which depends on the context of the case.  *Ezell v. Potter*, 400 F.3d 1041, 1049-50 (7th Cir. 2005); *Peele v. Country Mutual Ins. Co.,* 288 F.3d 319, 330 (7th Cir. 2002). In disciplinary cases, those cases in which the plaintiff claims he or she was disciplined more harshly than another employee based on a prohibited reason, the plaintiff must show that he or she is similarly situated with respect to performance, qualifications and conduct.  *Id*.  This normally entails a showing that the two employees

---

[10] Although this Court's decision is not based on Ms. Moore's job performance, it questions whether or not Ms. Moore could even establish that she was performing her job according to the Defendant Corporations' expectations.  The evidence presented reveals that Ms. Moore did not receive disciplinary conferences between July 3, 2001 and February 2003, and she did receive exceptional evaluation remarks one year prior to October 2002.  However, the relevant time frame is from the moment that Ms. Moore complained of sexual harassment on or about November 27, 2002, until the date of her termination on March 6, 2003.  The intervening facts of record are simply that Ms. Moore had previously been warned in 2001 that she could be terminated for failure to accept payment from a customer, and on March 1, 2003 a customer complained that Ms. Moore refused to accept payment.

dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Id.* (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir. 2000)).

Here, Ms. Moore first claims that Ms. Jeana Miller, also a collector for Defendant Corporations, is similarly situated. In fact, the record reflects that like Ms. Moore, Ms. Miller had also complained of sexual harassment against one of the company managers and Ms. Miller was never fired by the Defendant Corporations. Furthermore, there is absolutely no evidence in the record that establishes that Jeana Miller ever failed to accept payment from a customer, let alone was subsequently disciplined for doing so. Secondly, Ms. Moore asserts that Troy Moore is similarly situated because he failed to accept payment from the customer on March 1, 2003, he had never complained of sexual harassment, and yet he was not fired. However, Troy Moore was not fired for the March 1, 2003 incident because the customer complained that Ms. Moore, not Troy Moore, refused to accept the payment. Although this is enough to establish that Ms. Moore and Troy Moore also were not similarly situated, ultimately the record reflects that Troy Moore was subsequently terminated for refusing a direct request by the sales manager on collecting an account.

Even if Ms. Moore was able to establish a *prima facie* case of retaliation under the indirect method, Ms. Moore cannot survive summary judgment on a retaliation claim where she is unable to demonstrate the pretextual nature of Defendant's proffered reason to terminate Ms. Moore based on unsatisfactory work performance. The fairness or adequacy of the termination process is not relevant to the question of pretext. *Sanchez v.*

*Henderson*, 188 F.3d 740, 746 (7th Cir. 1999), *certiorari denied* 528 U.S. 1173; *See also O'Connor v. DePaul University,* 123 F.3d 665, 670 (7th Cir. 1997) (In pretext analysis, "we may not be concerned with whether the decision was right or wrong, fair or unfair, well considered or precipitous. We must look only at whether the reason [given] ... actually did underlie the plaintiff's termination.").   Although the Defendant Corporations may have failed to question Troy Moore regarding the March 1, 2003 incident, and even if we assume that Troy Moore was the employee who failed to take the payment from the customer, the Defendant Corporations' decision to terminate Ms. Moore was based on the letter written by the customer complaining that it was Ms. Moore who refused to accept the payment. *See also Bahl v. Royal Indemnity Company*, 115 F.3d 1283, 1292 (7th Cir. 1997) (in pretext discussion, "the only issue is whether management honestly held these views ...").   The Defendant Corporations may have been mistaken when it terminated Ms. Moore based on the customer's complaint, however mistake is not enough to overcome a non-retaliatory explanation.   Finally, the facts are undisputed that Defendants planned in late 2002 to early 2003 to downsize some of the smaller stores from two collectors to one.   Since Ms. Moore was fired, the Monticello dealership has remained a one collector operation since March of 2003.

### b.  Intentional Infliction of Emotional Distress

Finally, the Defendant Corporations seek summary judgment on Ms. Moore's state law claim for emotional distress.[11]   In *Cullison v. Medley*,[12] the Indiana Supreme

---

[11] For a similar discussion see, *Kelly Cordell v. Ancilla Domini Sisters, Inc.*, Cause No. 3:02CV0835AS (N.D. Ind. 2004).

[12] In *Cullison*, four family members of a sixteen-year-old girl entered plaintiff's trailer home without his permission.  One of the family members was armed with a handgun and a second family member led the plaintiff to believe that she was armed.  The defendants threatened the plaintiff and requested that he not see the sixteen-year-old again.  The Supreme Court recognized the tort of intentional infliction of emotional distress, however concluded that the plaintiff had not alleged facts sufficient so show the requisite intent to

Court recognized, for the first time, the tort of intentional infliction of emotional distress. *Cullison*, 570 N.E.2d 27 (Ind. 1991). Intentional infliction of emotional distress is committed by "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . ." *Ledbetter v. Ross*, 725 N.E.2d 120 (Ind. App. 2000); *citing Cullison*, 570 N.E.2d at 31. The elements of the tort are that a defendant must (1) engage in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. App. 1999). It is the intent to harm one emotionally that constitutes the basis for the tort of intentional infliction of emotional distress. *Id*.

It is not enough that Defendants acted with intent that was tortuous, or even criminal, or that they intended to inflict emotional distress, or even that their conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages. *Bradley*, 720 N.E.2d at 753. "Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *Id*., *citing* R.2d Torts § 46 (1965).

In *Bradley*, the Indiana Court of Appeals found that there was a triable issue of fact on the plaintiff's claim where she alleged that her supervisor harassed her, shouted at her, and criticized her work in front of other employees, inquired about her menopause and asked whether her husband was sexually impotent from diabetes, and where her

---

inflict emotional injury. *Cullison*, 570 N.E.2d at 31.

supervisor misrepresented the company's intentions about the security of her position. *Id*. The Court concluded that this conduct could be considered severe and outrageous, and permitted an inference that the supervisor intended to harm the plaintiff emotionally. *Id*.; *but see*, *King v. Wiseway Super Center, Inc.*, 954 F. Supp. 1289 (N.D. Ind. 1997) (dismissing a claim for intentional infliction of emotional distress, where the Plaintiff's supervisor constantly sabotaged her efforts to perform her job by scheduling her improperly, not allowing her to perform her job duties, not treating her as a manager, not giving her the information she needed, never communicating to her, never training her, forcing her to work without breaks, and making derogatory comments to others about her and her abilities); *see also McCrreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159 (7th Cir. 1997) (holding that a single incident of yelling at plaintiff and refusing to assign him to quality control is not the kind of "extreme and outrageous conduct" the Indiana Supreme Court had in mind when it adopted the tort).

In the present case, Ms. Moore has clearly not alleged facts sufficient to raise an inference that the Defendants' conduct was severe and outrageous, or that the Defendants' intention was to harm her emotionally. While Defendant Cappis' sexual harassment of Ms. Moore may have constituted unlawful conduct, while the Defendants' investigation and ultimate decision to terminate Ms. Moore may have been wrong, and while the subsequent transmission of incorrect employment information regarding Ms. Moore's attendance to a potential employer may have also been incorrect – these events, although undoubtedly distressing to Ms. Moore do not exceed all bounds usually tolerated by a decent society, such that a person hearing of it would exclaim, "Outrageous." These facts simply do not support a triable issue where Ms. Moore has

not asserted the kind of "extreme and outrageous conduct" that the Indiana Supreme Court had in mind when it adopted the tort.

### IV.Conclusion

Based on the foregoing analysis, the Defendants are entitled to judgment as a matter of law on the remainder of Plaintiff's claims. Therefore, the Defendants' Motion for Summary Judgment on Count II, Retaliatory Discharge, and Count V, Intentional Infliction of Emotional Distress, are **GRANTED**. This case is now considered closed and the clerk shall enter judgment in favor of the Defendants and against the Plaintiff. Each party is to bear its own costs.

**IT IS SO ORDERED.**

**DATED:** April 15, 2005

_____**s/ ALLEN SHARP**_____
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**